UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

JAISON APARICIO QUINTERO,   Petitioner,

v.   Civil Action No. 4:26-cv-34-DJH

SAMUEL OLSON, Field Office Director,
Chicago Field Office, Immigration and
Customs Enforcement et al.,   Respondents.

\* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

Petitioner Jaison Aparicio Quintero, a noncitizen resident of Illinois currently detained in the Western District of Kentucky, seeks a writ of habeas corpus pending removal proceedings. He alleges that his detention by immigration authorities violates the Immigration and Nationality Act, the Administrative Procedure Act, and the Due Process Clause of the Fifth Amendment. (Docket No. 1) The parties agreed to forgo a show-cause hearing given the absence of a material factual dispute (*see* D.N. 5), and they have submitted briefs setting out their respective legal arguments (D.N. 7; D.N. 8). After careful consideration, the Court will grant Quintero's petition for the reasons explained below.

**I.**

Quintero is a twenty-four-year-old native and citizen of Venezuela. (D.N. 1, PageID.6 ¶ 24; D.N. 7-2, PageID.37) He entered the United States on October 3, 2022, and was paroled pursuant to 8 U.S.C. § 1182(d)(5)(A).[1] (D.N. 1, PageID.6 ¶ 24; *see* D.N. 7-2, PageID.37) The parole expired on December 2, 2022. (*See* D.N. 1-3, PageID.13) Quintero has a pending asylum

---

[1] Parole under 8 U.S.C. § 1182(d)(5)(A) "permits a noncitizen to physically enter the [United States] . . . subject to a reservation of rights by the Government that it may continue to treat the noncitizen 'as if stopped at the border.'" *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 484 (S.D.N.Y. 2025) (quoting *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139 (2020)).

1

application. (D.N. 1, PageID.6 ¶ 27; *see* D.N. 1-4, PageID.14)  On April 30, 2025, his application for Temporary Protected Status was denied.  (D.N. 7-2, PageID.37)  Quintero was placed in removal proceedings on October 7, 2025, via a Notice to Appear, which charged him as an "arriving alien" and inadmissible as "an immigrant . . . not in possession of a . . . valid entry document." (*Id.*)  On December 17, 2025, U.S. Immigration and Customs Enforcement (ICE) officers arrested Quintero in Chicago, Illinois.  (D.N. 7-3, PageID.42)  Quintero remains detained at the Hopkins County Jail.  (D.N. 1, PageID.2 ¶ 1; D.N. 7, PageID.24)

Quintero seeks a writ of habeas corpus against Chicago ICE Field Office Director Samuel Olson, Department of Homeland Security Secretary Kristi Noem, U.S. Attorney General Pamela Bondi, and Hopkins County Jailer Mike Lewis. (*See* D.N. 1, PageID.4 ¶¶ 12–15)  Quintero alleges that the government improperly revoked his parole and that his detention without a bond hearing violates the Immigration and Nationality Act, 8 U.S.C. §§ 1182, 1225–1226; the Administrative Procedure Act; and due process under the Fifth Amendment.  (*See id.*, PageID.4–6 ¶¶ 16–23; *id.*, PageID.7 ¶¶ 28–33; D.N. 8, PageID.117)  Quintero asks the Court to order his immediate release and a hearing before an immigration judge. (*See* D.N. 1, PageID.8)  Respondents argue that (1) the Court lacks jurisdiction under 8 U.S.C. § 1252(a)(2)(B)(ii) to review the decision to revoke Quintero's parole; (2) Quintero is an "arriving alien" lawfully detained under § 1225(b)(2); (3) his parole was properly terminated; and (4) his detention does not violate due process under § 1225.[2]  (*See* D.N. 7, PageID.24–33)

---

[2] Respondents do not argue whether Quintero must exhaust administrative remedies. (D.N. 7-5, PageID.76 n.4)  Therefore, the Court will not address that issue.

## II.

**A.   Jurisdiction**

Respondents argue that the Court lacks jurisdiction under 8 U.S.C. § 1252(a)(2)(B)(ii) to review the decision to revoke Quintero's parole. (*See id.*, PageID.30–31) Section 1252(a)(2)(B)(ii) states that federal courts lack jurisdiction to "review . . . any . . . decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security." 8 U.S.C. § 1252(a)(2)(B)(ii). But the Departure Record issued to Quintero when he was released on parole states that his parole lasted until December 2, 2022, approximately two months after he entered the United States. (*See* D.N. 1-3, PageID.13; D.N. 7-1, PageID.35) Respondents also state in their response brief that Quintero's "parole was authorized through December 2, 2022, and it automatically terminated on [that] date" (D.N. 7, PageID.31). *See* 8 C.F.R. § 212.5(e)(1) (stating that "[p]arole shall be automatically terminated without written notice . . . at the expiration of the time for which parole was authorized"). And although Quintero included the Departure Record with his habeas petition (*see* D.N. 1-3, PageID.13), neither the petition nor his reply brief addresses the automatic termination of his parole; he instead argues that the government improperly terminated his parole when it detained him pursuant to the Notice to Appear. (*See* D.N. 1, PageID.4–5 ¶¶ 16–20; D.N. 8, PageID.113–16) Based on the record, and because the parties do not dispute that Quintero's parole automatically terminated on December 2, 2022, the Court need not address Respondents' jurisdictional argument given that Quintero's parole was not terminated as a matter of discretion. The Court has jurisdiction to consider Quintero's claims in any event. *See Lopez v. Olson*, No. 3:25-cv-654-DJH, 2025 WL 3217036, at *2 (W.D. Ky. Nov. 18, 2025) ("[28 U.S.C. § 2241] confers jurisdiction [on district courts] to hear

habeas corpus challenges to the legality of a noncitizen's detention." (citing *Rasul v. Bush*, 542 U.S. 466, 483–84 (2004))).

**B.     Immigration and Nationality Act**

Quintero asserts that his parole was revoked in violation of 8 U.S.C. § 1182(d)(5)(A) and that he is improperly detained under § 1225(b)(2). (*See* D.N. 1, PageID.4–5 ¶¶ 16–20; D.N. 8, PageID.112) Incorporating by reference arguments from the appellants' brief in *Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771 (E.D. Mich. 2025), *appeal docketed*, No. 25-1965 (6th Cir. Oct. 27, 2025) (*see generally* D.N. 7-5), Respondents argue that the government properly revoked Quintero's parole but that he is an "arriving alien" lawfully detained under § 1225(b)(2) in any event. (*See* D.N. 7, PageID.24–33) For the reasons discussed above, the Court need not address whether Quintero's parole was revoked in violation of the Immigration and Nationality Act.

"When a Section 1182 humanitarian parole terminates, 'the alien shall forthwith return or be returned to the custody from which he was paroled[,] and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.'" *Daza v. Albarran*, No. 25-cv-10214-RFL, 2026 WL 81518, at *3 (N.D. Cal. Jan. 12, 2026) (quoting 8 U.S.C. § 1182(d)(5)(A)). "[T]he 'returned to the custody' language of this provision does not 'affirmatively authorize[] detention.'" *Id.* (alteration in original) (quoting *Clark v. Martinez*, 543 U.S. 371, 385 (2005)); *see Qasemi v. Francis*, No. 25-cv-10029 (LJL), 2025 WL 3654098, at *10 (S.D.N.Y. Dec. 17, 2025) ("[T]he instruction that the noncitizen be 'returned to the custody from which he was paroled' does not mean a return to physical custody. The law and the statute draw a distinction between 'detention' and 'custody.'"). Thus, "mere termination of [Quintero's] parole does not result in [his] mandatory detention." *Daza*, 2026 WL 81518, at *3

4

(citing *Rodriguez-Acurio v. Almodovar*, No. 2:25-cv-6065 (NJC), 2025 WL 3314420, at *18 (E.D.N.Y. Nov. 28, 2025)).

Instead, upon termination of parole, a petitioner's "case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." § 1182(d)(5)(A). An "applicant for admission" is "[a]n alien present in the United States who has not been admitted or who arrives in the United States." § 1225(a)(1). Parole "shall not be regarded as an admission of the alien," § 1182(d)(5)(A); thus, noncitizens released on parole remain applicants for admission after their parole ends. *See Daza*, 2026 WL 81518, at *3. As an applicant for admission, Quintero "remains subject to regular removal proceedings" and "may be detained if certain criteria are met, as set forth in Section 1226(a)." *Id.* (citing *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022)). Section 1226(a) likewise applies where, as here (*see* D.N. 7-2, PageID.37), "a petitioner's re-arrest was not a continuation of the initial border encounter, but an independent decision to detain the individual after the expiration of his parole." *Ivonin v. Rhoney*, No. 6:25-CV-06673 EAW, 2026 WL 199283, at *4 (W.D.N.Y. Jan. 26, 2026) (emphasis omitted). "Section 1226 generally governs the process of arresting and detaining aliens once inside the United States." *Chavez v. Dir. of Detroit Field Off.*, No. 4:25-cv-02061-SL, 2025 WL 2959617, at *4 (N.D. Ohio Oct. 20, 2025) (citing *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018)).

Respondents nevertheless maintain that Quintero is an "arriving alien" subject to mandatory detention under § 1225(b)(2). (*See* D.N. 7, PageID.24–27) Department of Homeland Security regulations define an "arriving alien" as "an applicant for admission coming or attempting to come into the United States . . . regardless of the means of transport." 8 C.F.R. § 1.2. Noncitizens who remain in the United States after their parole ends are not "arriving aliens." *See Daza*, 2026 WL 81518, at *4 ("At the time of her . . . detention [the day her parole expired],

Petitioner was not an arriving noncitizen seeking entry into the country and had been living here for one year."); *Wang v. Lyons*, No. 25-cv-10794-WHO, 2026 WL 147703, at *5–6 (N.D. Cal. Jan. 20, 2026) (finding that petitioner detained when his one-year term of parole expired was not an "arriving alien" for purposes of § 1225); *Ivonin*, 2026 WL 199283, at *3–4 (finding that petitioner arrested seven years after parole expired was detained under § 1226(a) despite Notice to Appear designating him as "arriving alien"). And although § 1225 addresses the "expedited removal of inadmissible arriving aliens," the provision that Respondents argue authorizes Quintero's detention—§ 1225(b)(2)—does not pertain to arriving aliens. (*See* D.N. 7, PageID.25, 27) Instead, as this Court and others have made clear, § 1225(b)(2) applies where an applicant for admission is also "seeking admission" to the United States. § 1225(b)(2)(A); *see, e.g.*, *Alonso v. Tindall*, No. 3:25-cv-652-DJH, 2025 WL 3083920, at *6 (W.D. Ky. Nov. 4, 2025); *Barrera v. Tindall*, No. 3:25-cv-541-RGJ, 2025 WL 2690565, at *4 (W.D. Ky. Sep. 19, 2025); *Daza*, 2026 WL 81518, at *4. "[T]he category of applicants for admission covered by § 1225(b)(2) who are 'seeking admission' is meant to refer to those who are presenting themselves at the border, or who were recently apprehended just after entering." *Hyppolite v. Noem*, No. 25-CV-4304 (NRM), 2025 WL 2829511, at *9 (E.D.N.Y. Oct. 6, 2025). This category does not include petitioners who remained in the United States after their parole ended. *See Daza*, 2026 WL 81518, at *4 (finding that petitioner arrested the day her one-year term of parole expired "was not seeking admission at the time of her detention"); *Ivonin*, 2026 WL 199283, at *4 (rejecting argument that petitioner "[was] still on the threshold of entry into [the United States]" seeking admission seven years after parole expired).

In accordance with its prior decisions, the Court concludes that Quintero is detained under § 1226(a), not § 1225(b)(2), and is thus entitled to a bond hearing. *See Coronel-Hernandez v.*

*Woosley*, No. 4:26-cv-20-DJH, 2026 WL 227011, at *4 (W.D. Ky. Jan. 28, 2026); *Singh v. Lewis*, No. 4:25-cv-133-DJH, 2025 WL 3298080, at *5 (W.D. Ky. Nov. 26, 2025); *Lopez*, 2025 WL 3217036, at *3; *Alonso*, 2025 WL 3083920, at *8.

**C.    Due Process**

Quintero asserts that his detention violates due process under the Fifth Amendment. (*See* D.N. 1, PageID.7 ¶¶ 30–33) Respondents argue that Quintero "is not owed any more process than Congress has authorized" under § 1225(b)(2) and "has not suffered any deprivation of due process." (D.N. 7, PageID.27) Because Quintero is detained under § 1226(a), not § 1225(b)(2), Respondents' argument as to the due process required by § 1225(b)(2) is futile. *Singh*, 2025 WL 3298080, at *5.

The Fifth Amendment's Due Process Clause extends to all persons, including noncitizens, regardless of immigration status and in the context of removal proceedings. *Plyler v. Doe*, 457 U.S. 202, 210 (1982) (citations omitted); *A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025) (per curiam) (citation omitted). To determine whether civil detention violates a petitioner's due process rights, the Court applies the three-part balancing test set out in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *Alonso*, 2025 WL 3083920, at *8 (citing *Barrera*, 2025 WL 2690565, at *6). Under that test, the Court weighs

> (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the United States' interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Barrera*, 2025 WL 2690565, at *6 (citing *Mathews*, 424 U.S. at 335).

Like the petitioners in *Barrera* and other cases recently before the Court, Quintero "has a significant private interest in not being detained." *Id.*; *see Coronel-Hernandez*, 2026 WL 227011,

7

at *5; *Alonso*, 2025 WL 3083920, at *9.  Moreover, "the risk of erroneously depriving [Quintero] of his freedom is high if the [immigration judge] fails to assess his risk of flight and dangerousness."  *Lopez-Campos*, 797 F. Supp. 3d at 785; *see* 8 C.F.R. § 1236.1(c)(8), (d)(1).  Finally, the Court "recognizes that the United States does have a strong interest in ensuring noncitizens do not harm their community and that they appear for future immigration proceedings."  *Barrera*, 2025 WL 2690565, at *7 (citation omitted).  But a "routine bond hearing before an [immigration judge]" presents "minimal" fiscal and administrative burdens, and "there is an established process for doing so that [the Department of Homeland Security] can readily follow here."  *Hyppolite*, 2025 WL 2829511, at *15.  Thus, because all three *Mathews* factors weigh in Quintero's favor, the Court concludes that his detention violates due process.[3]  *See Singh*, 2025 WL 3298080, at *5–6; *Barrera*, 2025 WL 2690565, at *6–7.

### III.

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1)   Quintero's petition for a writ of habeas corpus (D.N. 1) is **GRANTED**.  Respondents are **DIRECTED** to immediately release Quintero, and, in the event he is arrested and re-detained, provide him with a bond hearing before a neutral Immigration Judge in accordance

---

[3] In light of this conclusion, the Court need not analyze the Administrative Procedure Act allegation (*see* D.N. 1, PageID.4–5 ¶¶16–20).  *See Choy v. Woosley*, No. 4:25-cv-197-DJH, 2026 WL 324601, at *6 (W.D. Ky. Feb. 6, 2026) (declining to consider Administrative Procedure Act claims after concluding that petitioner's detention violated due process); *Londono Perez v. Moniz*, No. 25-cv-13779-FDS, 2025 WL 3653846, at *2 (D. Mass. Dec. 17, 2025) (declining to reach claims under Fourth Amendment and Administrative Procedure Act after finding that petitioner was entitled to bond hearing).

with 8 U.S.C. § 1226(a). Respondents **SHALL** certify compliance with the Court's Order by a filing on the docket no later than **March 5, 2026**.

    (2)    Upon receipt of the notice of compliance, this matter will be **CLOSED**.

March 3, 2026

David J. Hale, Chief Judge
United States District Court

9